SOUTHERN RY. CO. et al. v. RUSSELL (two cases).—66 S. W. (2d) 1007.

Eastern Section. July 1, 1933.

Petition for Certiorari denied by Supreme Court, November 18, 1933.

Cooke, Swaney & Cooke, of Chattanooga, for plaintiffs in error.

Will F. Chamlee and M. B. Harris, both of Chattanooga, for defendants in error.

SENTER, J. These two causes grew out of the same incident and were tried together by the same jury.

Shepard Russell is the father of W. T. Russell, and his separate suit is for loss of services of his minor son, and expenses incurred, and the suit of W. T. Russell, by next friend, Shepard Russell, is against the same defendants, Southern Railway Company, Alabama Great Southern, Cincinnati, New Orleans & Texas Pacific Railway Company, W. J. Robertson, and Thomas Argo.

The respective declarations aver, in substance, that W. T. Russell, a colored boy about thirteen years of age, while walking along a well-beaten path in the yards of the defendant railroad companies in Chattanooga, was fired upon and shot in the back, resulting in permanent injuries. By the first count of the respective declarations, it is averred that W. J. Robertson, who was in the employ of the defendant Southern Railway Company, and who was on the

tender of the locomotive of one of the Southern Railway Company's engines to watch for trespassers and to protect the property of such defendant, without any just cause, fired two shots at plaintiff W. T. Russell, the second shot taking effect in his back. The third count in the declaration avers substantially the same matter as the first count, except that in the third count it is averred that Thomas Argo, who was acting for and on behalf and by the orders and directions of the defendant railroad companies, and within the scope of his duties as such employee, fired the shots which resulted in the permanent injuries to plaintiff W. T. Russell. All of the defendants filed pleas of not guilty.

At the trial of the causes, the respective plaintiffs, on motion of the respective defendants, were required to elect which of the counts in their respective declarations would be relied upon. Also the defendants moved to strike the second count of the respective declarations, and these motions were sustained by the trial judge. Whereupon, the respective plaintiffs elected and so announced to stand on the first counts of the declarations, and then took a nonsuit as to all the defendants, except the defendants Southern Railway Company and W. J. Robertson.

The jury, under the instructions of the trial judge, returned separate verdicts. In the case of Shepard Russell the jury returned a verdict in favor of plaintiff and against both defendants for the sum of $1,500, and a verdict in favor of plaintiff W. T. Russell, by next friend, and against both defendants, for the sum of $5,000.

For convenience, the parties will be hereinafter referred to as in the status below, Shepard Russell and W. T. Russell, by next friend, as plaintiffs, and the Southern Railway Company and W. J. Robertson, as defendants.

The defendants filed a motion for a new trial. The motion was taken under advisement by the trial judge, and subsequently the defendants were permitted to file supplemental motions for a new trial, and in said supplemental motions sought a new trial on the grounds of newly-discovered evidence.

In support of the motion and supplemental motion for a new trial, the defendants filed several affidavits, and also introduced several witnesses. The plaintiffs also introduced affidavits resisting the motion for a new trial, both on the grounds of newly-discovered evidence and of alleged misconduct upon the part of the jury. After a full hearing, the learned trial judge overruled the motion for a new trial, and rendered judgments on the respective jury verdicts.

From the action of the trial judge in overruling their motion for new trials, both defendants have appealed to this court, and have assigned errors. These assignments of error may be grouped. The first group is directed especially to the question that there was no material evidence to support the verdict of the jury, and that plain-

tiffs' evidence was contradicted in all material respects by certain alleged physical facts, which rendered said evidence valueless. The second group of assignments of error are directed especially to the action of the court in denying the motion for a new trial on the grounds of newly-discovered evidence, making the affidavits of the respective affiants offered in support of the motion for a new trial the basis of separate assignments.

■ There was a decided conflict in the evidence as to who shot plaintiff W. T. Russell, and from whence the shot which struck him came. Several witnesses who testified in behalf of plaintiffs stated that they saw the defendant W. J. Robertson on the tender attached to the locomotive, and saw him fire the two shots from the pistol, the second of which took effect in W. T. Russell's back. Several of these witnesses identified W. J. Robertson as the person who was on the tender of the locomotive and who did the shooting. W. J. Robertson testified that he was on the tender, but was in what is referred to as the "dog house," which appears to be a boxlike space inclosed with glass windows and a glass door, situated near the rear of the tender. He denied that he fired either of the shots, and denied that he heard any shots fired. He admits that he was in the employ of the Southern Railway Company, and that he was vested with certain police powers, and that it was his duty to look out for trespassers and to apprehend them, and to protect the property of the defendant railway company. Other witnesses for the defendants testified that it was not W. J. Robertson who did the shooting.

Near the location where plaintiff was shot there is a curve in the railroad. There is a conflict in the evidence as to just where plaintiff was shot with reference to the curve. There were also two tracks at that point, and there was some conflict in the evidence as to whether the train was on the track nearest the path along which Russell was walking, or whether it was the next track beyond.

Plaintiff W. T. Russell testified that his home was in Atlanta, and that he came to Chattanooga on the day before he was shot, and had been to the river to go in swimming with a group of colored boys, and that he and a number of other colored boys were returning and walking along the pathway adjoining the tracks of defendant railroad company. He testified that after the locomotive passed him, drawing a long train of cars, he heard a shot and turned his head and looked back to see from whence it came and then saw the man on the tender of the locomotive with a pistol in his hands, and this man fired again, the ball taking effect in his back, and that it knocked him down and he rolled down the embankment. It is true that this boy testified on cross-examination that several of the cars had passed him, some ten or twelve, at the time he heard the shot, and turned and saw the man on the tender who fired the second

shot. He was handed a photograph on cross-examination and was asked to designate on the photograph by a cross-mark the point where he was standing at the time he received the shot, and he made a mark on the photograph at a point about where he thought he was standing. By the cross-examination of this plaintiff, the attorney for the defendants sought to show by him that, if he was standing at that point, the locomotive and tender had passed around the curve, and that it would have been impossible for him to have seen any person standing on the tender or to have seen any shot fired from the tender. The attorney for the defendants during the trial of the case, and in the cross-examination of other of plaintiffs witnesses, sought to show that, if Russell was standing at the place indicated by him in the photograph, it was impossible for him to have seen the tender of the locomotive, and that the tender and locomotive would have been around the curve. The same physical facts were sought to be shown and were shown by certain of defendant's witnesses during the trial, and this appears to have been one of the controverted questions in the trial of the case. As to whether or not the physical facts contradicted the evidence of plaintiff and his witnesses depended largely upon the accuracy of the exact location of this boy at the time he was shot, and also the accuracy in stating on cross-examination the number of cars that had passed him before the shots were fired. These were facts to be considered by the jury. The jury by its verdict determined these facts in favor of plaintiffs and against the theory of the defendants. There being material evidence to support the jury verdict, it is too well settled to need citation of authorities, that the verdict will not be disturbed on appeal.

Among other grounds for the motion for a new trial, it was sought to be shown that one of the jurors made a statement after he was accepted as a juror and in the presence of other members of the jury, to the effect that Robertson had been known to shoot other men, and that the Supreme Court in another case had affirmed a judgment against the railroad company wherein Robertson, as the agent and employee of the company, had shot the plaintiff in that case. At the hearing of the motion for a new trial, the juror, Ross, testified that he made no such statement; that he had never heard of any such case, or decision, by the Supreme Court, and did not know Robertson. The other eleven jurors also testified that Ross did not make any such statement in their hearing. The defendants sought to show by a Mr. Gardenhire, who was a regular juror, but who had been excused from service as a juror in this case because he was in the employ of the defendant railway company, that he overheard the juror Ross, or a person occupying the seat of Ross, make such a statement. He admitted that this was before the jury was made up, and he did not identify Ross as the juror. We think

it clear that, if Gardenhire heard any such statement from any one, it was from some bystander, or some one other than Ross or any member of the jury while the preliminary matter was being disposed of, and not made in the presence of any member of the jury.

After the original motion for a new trial had been filed, it was subsequently taken up, but the attorney for the defendants was not present, and it was not then disposed of, but was passed over, and subsequently the defendants, several months later, were permitted to amend or supplement the original motion for a new trial, which original motion had not been disposed of, by adding the grounds of newly-discovered evidence, setting forth in said motion in detail the alleged newly-discovered evidence of several witnesses, and filed the affidavits of several witnesses in support of the motion. Other witnesses testified orally at the hearing of the motion for a new trial, and plaintiffs filed several counter affidavits. By the affidavit of Mr. Cook, attorney for the defendants, it is urged that the defendants were taken by surprise when plaintiffs elected to stand on the first count, alleging that it was W. J. Robertson who fired the shot; and were further taken by surprise at the evidence that the shots were fired from the tender of the locomotive.

When the election was made by plaintiffs to stand by the first count in the declaration, neither of the defendants made any application for a continuance of the case, or for any suspension of the case, but proceeded with the trial. This motion requiring the plaintiffs to elect upon which count of their respective declarations they would stand was made by all the defendants, and the election was made by the direction of the court upon the motion of all the defendants. The fact that the defendants Southern Railway Company and W. J. Robertson were made party defendants, and the further fact that the first count of both declarations charged that Robertson, who was in the employ of defendant railway company, did the shooting, certainly put both these defendants upon notice that, under one theory of plaintiffs, it would be insisted that Robertson did the shooting, and certainly defendant Southern Railway Company knew that Robertson was in its employ with certain police powers and charged with the duty of ejecting trespassers from the trains and yards of the defendant and protecting the property of the defendant. It is also contended by the affiants, attorneys for the defendants, that they were taken by surprise by the evidence of plaintiffs' witnesses that the shot was fired from the tender of the locomotive and not from some other part of the passing train. We think it is well settled, in this state at least, and other jurisdictions, that evidence material and relevant to the issues made by the pleadings cannot be considered as surprise evidence, and the defendant should be prepared to meet all material and relevant evidence introduced at the trial. Stafford v. Stafford, 1 Tenn. App., 482; Nel-

lums v. City of Nashville, 106 Tenn., 222, 61 S. W., 88; Chattanooga Ry. & Light Co. v. Deakins, 3 Tenn. Civ. App. (3 Higgins), 28. It is also a well-settled rule that in surprise evidence the party taken by surprise by the evidence should act promptly. It is said to be the first duty of counsel surprised at the trial to secure a delay by proper legal methods, but he cannot neglect this in hope of securing a verdict in spite of surprise and then obtain a new trial. Nellums v. City of Nashville, supra.

In Hood v. Grooms, 4 Tenn. App., 514, it is said:

"If the evidence already admitted on the subject was competent under the issues then the plaintiff must be ready to meet it. The plaintiff must be ready with proof to meet all competent testimony, and cannot rely on surprise at the introduction of any competent testimony."

On this subject, see, also, Love v. Nashville Agricultural & Normal Institute, 6 Tenn. App., 109, and cases cited.

We are of the opinion that assignments of error based upon surprise cannot be sustained under the facts as disclosed by this record so as to entitle the defendants to a new trial.

This brings us to a consideration of the assignments of error based upon newly-discovered evidence, and as reflected by the affidavits and evidence referred to under sixth, seventh, eighth, ninth, tenth, and eleventh assignments. The first of these is with reference to the affidavit signed on January 4, 1933, by Force Johnson. This affiant subsequently made another affidavit which was filed by plaintiffs in connection with the motion for a new trial, and, in the second affidavit, the affiant, Force Johnson, completely repudiates all that was said in his affidavit of January 4, 1933, and, in the second affidavit, he states that he did not witness the shooting of the Russell boy, as set forth in his first affidavit, but explained that it was a separate and distinct incident, and that the shooting which he actually saw did not occur on June 10, the date on which Russell was shot, but occurred the latter part of July, and he makes the second affidavit to correct the mistake he had made in the first affidavit. The next affidavit relied upon as newly-discovered evidence is the affidavit of Maggie Barker. She does not claim to have been present when the shooting occurred, and her affidavit was not materially competent at all as evidence. The next affidavit relied upon is that of Granville Hunt, which was sworn to on January 5, 1933, and in which he states that he was at the scene of the shooting, and that he knows that Robertson did not do the shooting, but that a man dressed in overalls did the shooting. On January 20, 1933, Granville Hunt made another affidavit, which was filed by plaintiffs, and in which he repudiates the first affidavit, and claims that the first affidavit did not correctly quote him, and in the second affidavit stated that he was not present when the Russell boy was

shot. The next affidavit relied upon is that of Lige Scott. There was nothing of any especial materiality in the Scott affidavit, and certainly not sufficient in itself to sustain the ground of newly-discovered evidence. The next affidavits made the basis of an assignment of error are those of Dee Cook and James Cook. Neither of these boys claim to have seen the shots fired in their affidavits; the affidavit of Dee Cook does not contain any material matter, and is largely the expression of his opinion as to the curve obscuring the view. The affidavit of James Cook is more in detail, and goes more into the question of where he was when he heard the shots fired, but he does not claim to have seen who fired the shots. He did not see the Russell boy at the time the Russell boy was shot. He stated in his affidavit that after he heard the shots he saw some boys further up the track or roadbed running down an embankment, and he went on up to that place and then saw the Russell boy down the embankment and saw that he had been shot.

Other affidavits and other evidence is offered, but, when they are analyzed, we think it clear that it did not constitute any new evidence that could not have been discovered by the exercise of proper diligence upon the part of the defendants. In this connection, it is clear from the record that the defendant railroad company had numerous special agents, police sergeants, and police captains, in their employ for the purpose of investigating the facts of all cases, and had unusual facilities for discovering the truth and the real facts and preparing cases for trial.

After a careful consideration of all the affidavits and evidence offered in support and in connection with the motion for a new trial, we are of the opinion that the learned trial judge was not in error in overruling and disallowing the motion for a new trial. We will add that much of the evidence and counter affidavits tends to show that certain of the agents of the defendant in seeking to procure newly-discovered evidence resorted to rather questionable methods. This is especially true of one Wallace Sims, who was very active as the agent of the defendant railway company in procuring evidence in support of the motion for a new trial. However, we deem it unnecessary to further discuss the question of newly-discovered evidence.

It results that we find no error, and the respective judgments in the respective cases are accordingly affirmed.

Appellants and surety on the appeal bonds will pay the cost of this appeal.

Heiskell and Anderson, JJ., concur.